IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UGI SUNBURY LLC, | : | Case No: 3:16-CV-00801 |
| | : | |
| PLAINTIFF | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| A PERMANENT EASEMENT FOR | : | |
| 0.5032 ACRES, AND TEMPORARY | : | |
| CONSTRUCTION AND ACCESS | : | |
| EASEMENT FOR 1.0364 ACRES IN | : | |
| EAST CHILLISQUAQUE TOWNSHIP, | : | |
| NORTHUMBERLAND COUNTY, | : | |
| PENNSYLVANIA TAX PARCEL | : | |
| NO. 022-00-022-084 | : | |
| | : | |
| JOSEPH F. AGOLIA, JR. | : | |
| 989 SOUTH MILL ROAD | : | |
| MILTON, PA 17847 | : | |
| | : | |
| THE NORTHUMBERLAND NATIONAL | : | |
| BANK | : | |
| 87 LORI LANE | : | |
| SELINSGROVE, PA 17870 | : | |
| | : | |
| AND ALL UNKNOWN OWNERS | : | |
| | : | |
| DEFENDANTS | : | |

**MEMORANDUM**
June 14, 2016

Pending before this Court are four Motions for Partial Summary Judgment and four Motions for Preliminary Injunction filed by Plaintiff UGI Sunbury, LLC, a wholly owned subsidiary of UGI Energy Services, LLC, a Pennsylvania Limited

Liability Company (hereinafter "UGI"). The Federal Energy Regulation Commission (hereinafter "FERC") has granted UGI a blanket certificate of public convenience and necessity (hereinafter the "FERC Certificate"), authorizing it to construct a 20-inch diameter pipeline over 34.4 miles spanning Snyder, Union, Northumberland, Montour, and Lycoming Counties. This Pipeline is designed to add 200,000 dekatherms per day of new pipeline capacity to industrial and residential users.

Easements over much of the 34.4 miles have previously been acquired by contract; condemnation actions pursuant to the Natural Gas Act, 15 U.S.C. § 717 and Federal Rule of Civil Procedure 71.1, however, have been filed against twenty-four landowners, interest holders, and all unknown owners of the properties who have not yet agreed to contract terms. Emergency motions for preliminary injunctions were filed in eleven of the twenty-four cases and four preliminary injunction motions remain.[1] Accordingly, this Memorandum and the Orders that follow will resolve the Motions for Partial Summary Judgment and Motions for Preliminary Injunction in the four remaining cases.[2] For the following reasoning, all of the motions are granted and judgment is entered in favor of UGI.

---

[1] UGI requested expedited hearings in these eleven cases. After a telephone conference with UGI and Defendants, this Court denied UGI's request and scheduled the Preliminary Injunction hearing for June 3, 2016, fourteen days after the teleconference. Prior to the Preliminary Injunction hearing, the parties reached agreements in the following cases with regard to the Preliminary Injunction Motions: 3:16-cv-00782, 3:16-cv-00786, 3:16-cv-00797, 3:16-cv-00800, and 3:16-cv-00806. Additionally, the following cases resolved in their entirety: 3:16-cv-00787 and 3:16-cv-00804.

[2] These cases are docketed in this Court as 3:16-cv-00783, 3:16-cv-00793, 3:16-cv-00798, and 3:16-cv-00801.

## I. STANDARD OF REVIEW

Because of the unique procedures associated with federal condemnation actions under the Natural Gas Act, UGI must first establish that it has a substantive right to condemn the property at issue. Once a substantive right has been found, a court "may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction" pursuant to Federal Rule of Civil Procedure 65, which governs the granting of preliminary injunctions.[3] Rule 65 provides in pertinent part:

> **(a) Preliminary Injunction.**
>
> > **(1) *Notice.*** The court may issue a preliminary injunction only on notice to the adverse party.
> >
> > **(2) *Consolidating the Hearing with the Trial on the Merits.*** Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial
> >   . . .
>
> **(c) Security.** The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

---

[3] *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004); *see also Constitution Pipeline Co., LLC. v. A Permanent Easement for 1.92 Acres*, 2015 WL 1219524, *2 (M.D. Pa. March 17, 2015).

Generally, a party seeking a preliminary injunction must establish four factors: (1) a reasonable probability of success on the merits of their argument; (2) irreparable harm to the movant in the absence of relief; (3) granting the preliminary injunction will not result in greater harm to the nonmoving party; and (4) the public interest favors granting the injunction.[4] "It is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial or on the merits.'"[5] "A preliminary injunction[, however,] is an extraordinary remedy never awarded as of right."[6]

## II. DISCUSSION

UGI seeks an Order allowing immediate entry to the properties so that it may complete construction of its pipeline by February 1, 2017, the deadline fixed by an agreement reached with Hummel Station, LLC (hereinafter "Hummel"), (described as the "foundation shipper" with whom UGI contracted).[7] In order to make this deadline, UGI alleges that it is necessary to gain access to the subject properties to engage in tree clearing, or feting, as soon as possible in order to comply with UGI's Migratory Bird Treaty Act Plan filed with FERC (hereinafter "MBTA Plan"). This plan imposes restrictions seeking to minimize impacts on

---

[4] *See American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).
[5] *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (*citing University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).
[6] *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008).
[7] The FERC Certificate alternatively established a deadline of April 29, 2018 for completion of the pipeline.

nesting birds of special concern. The MBTA Plan requires that UGI clear the trees on the properties at issue prior to the prime nesting of these birds, between May 1, 2016 and August 31, 2016, or take special measures, like creating a twenty-five foot buffer around a tree where a nest is found and monitoring the tree for forty-two days.[8]

As a matter of correct procedure, this Court must first resolve the motions for partial summary judgment and find that UGI has a substantive right to condemn the properties at issue. This Court must then decide the preliminary injunction issue.

**A. UGI's Motions for Partial Summary Judgment**

UGI's motion for partial summary judgment seeks a finding from the Court that UGI has a substantive right to condemn the property. It argues that it has secured the required FERC Certificate and that the only open issue is that of just compensation. Defendants filed responses to UGI's motions for partial summary judgment, setting forth two arguments.[9] The Court will discuss each argument in turn.

---

[8] In its motions, UGI claimed that it needed to gain access to the properties by May 23, 2016 in order to complete the tree clearing by the bird nesting season starting on June 1, 2016. During a telephone conference with the Court, however, one of the defense attorneys pointed out that footnote 131 of the FERC plan states that the nesting period is actually May 1 through August 31.

[9] Docket No. 16-783, ECF No. 16; Docket No. 16-793, ECF No. 16; Docket No. 16-798, ECF No. 16; Docket No. 16-801, ECF No. 17. Note, Counsel filed responses and not opposition briefs.

1. **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A fact is "material" where it "might affect the outcome of the suit under the governing law."[11] A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party."[12]

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.[13] The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.[14]

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact

---

[10] Fed. R. Civ. P. 56(a).
[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[12] *Id.*
[13] *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).
[14] *Id.* at 331.

because they may reasonably be resolved in favor of either party."[15] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[16]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[17] Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[18]

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.[19] Credibility determinations are the province of the factfinder, not the district court.[20] Although the Court may consider any materials in the record, it need only consider those materials cited.[21]

---

[15] *Anderson*, 477 U.S. at 250.
[16] Fed. R. Civ. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.
[17] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co*., 311 F.3d 226, 233 (3d Cir. 2003).
[18] Fed. R. Civ. P. 56(e)(2).
[19] *Anderson*, 477 U.S. at 249.
[20] *BWM, Inc. v. BMW of N. Am., Inc*., 974 F.2d 1358, 1363 (3d Cir. 1992).
[21] Fed. R. Civ. P. 56(c)(3).

## 2. DISCUSSION

Section 717f(h) of the Natural Gas Act grants the right of eminent domain for construction of pipelines:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

"[A] certificate of public convenience and necessity [therefore] gives its holder the ability to obtain automatically the necessary right of way through eminent domain, with the only open issue being the compensation the landowner defendant will receive in return for the easement."[22]

---

[22] *Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Tp., York County, Pa., et. al*, 768 F.3d 300, 304 (3d Cir. 2014).

*a. Excessive Taking*

Defendants first argue that UGI "seeks property rights which are excessive to its actual need." Specifically, they contend that the proposed condemnation, as stated in the complaint filed by UGI, prohibits the property owners from use of "said permanent right of way or any part thereof for a road."[23] They argue that this qualifies as a "taking of private property for a future, speculative need" and is "invalid as an excessive condemnation" under *Pidstawski v. South Whitehall Tp.*[24]

Defendants object to the following language in the complaint:

> "Rights of Way" shall mean the following easements and rights of way on the Property that are necessary to install and construct the Project:
> (i) A permanent right of way and easement, containing 4.4944 acres, as described as "Area of Permanent Right of Way" in Exhibit "A" attached hereto, for the purpose of constructing, operating, maintaining, altering, repairing, changing the size of, replacing and removing a pipeline . . . for the transportation of natural gas . . . as approved by the Federal Energy Regulatory Commission pursuant to the Natural Gas Act and the Order of the Federal Energy Regulatory Commission dated April 29, 2016 . . ., together with all rights and benefits necessary or convenient for the full enjoyment or use of the right of way and easement. Defendants shall not build any permanent structures on said permanent right of way or any part thereof, . . . **or**

---

[23] Docket No. 16-783, ECF No. 1 at 4; Docket No. 16-793, ECF No. 1 at 4; Docket No. 16-798, ECF No. 1 at 4; Docket No. 16-801, ECF No. 1 at 4.

[24] ECF Nos. 16, 16, 16, 17 at ¶¶ 7, 12 (*citing Pidstawski v. South Whitehall Tp.*, 380 A.2d 1322 (Pa. Cmnwlth. Ct. 1977). *Pidstawski*, however, is not helpful to the instant matters. First, the court in *Pidstawski* ultimately held that the land was appropriately condemned. Second, *Pidstawski* is distinguishable from the cases at hand, as the land condemned in *Pidstawski* was not taken pursuant to a FERC certificate of public necessity. In order to obtain the FERC Certificate here, FERC engaged in a thorough review of environmental impacts and operation considerations, including hundreds of comments from the general public, including federal, state, and local agencies, elected officials, environmental and public interest groups, potentially affected landowners, and other interested stakeholders, all of whom were provided notice and given opportunity to comment. These same considerations were not provided in the condemnation in *Pidstawski*.

**use said permanent right of way or any part thereof for a road** . . .[25]

Defendants contend that UGI's prohibition on Defendants' use of any part of the right of way for a road exceeds the property rights granted in the FERC Certificate.[26] As UGI pointed out at the preliminary injunction hearing, Defendants make the same unsuccessful argument that was presented in *Constitution Pipeline Co., LLC v. A Permanent Easement for 1.92 Acres*.[27] In that case, the Honorable Malachy E. Mannion, of this Court, explained:

> The defendant argues that the taking at issue is not in accordance with the fundamental principle of eminent domain law that the condemner may only take property interest which is necessary to achieve the particular public purpose. Specifically, this condemnation prohibits the property owner from making any use of the permanent easement as a road without written authorization. The defendant further contends that the FERC Certificate did not include the authority to condemn for this particular property right . . . [and] suggests that the condemnation should be more narrowly tailored to serve that particular purpose. There is also a general dispute as to whether the restraint is needed at all.
>
> The plaintiff argues that permanent easement "simply requires the written consent of Constitution prior to using any part of the permanent easement as a road." The plaintiff explains that the

---

[25] Docket No. 16-783, ECF No. 1 at 4; Docket No. 16-793, ECF No. 1 at 4; Docket No. 16-798, ECF No. 1 at 4; Docket No. 16-801, ECF No. 1 at 4.

[26] In the case at bar, Defendants do not appear to challenge the FERC Certificate itself. It is well established that the proper channel to challenge the FERC certificate is to seek administrative review under the Natural Gas Act and judicial review is only available in the Court of Appeals. *Millennium Pipeline Co., L.L.C. v. Certain Permanent and Temporary Easements*, 777 F. Supp. 2d 475, 480-81 (W.D.N.Y. 2011) (*citing* 15 U.S.C. §§ 717r(a) and (b)). "District Courts ... are limited to jurisdiction to order condemnation of property in accord with a facially valid certificate. Questions of the propriety or validity of the certificate must first be brought to [FERC] upon an application for rehearing and the Commissioner's action thereafter may be reviewed by a United States Court of Appeals." *Id.* (*quoting Williston Basin Interstate Pipeline Co. v. Dolyniuk Family Trust,* No. A1–03–66, 2005 WL 1398692, at *2 (D.N.D. June 7, 2005)).

[27] 2015 WL 1219524, *4 (M.D. Pa. March 17, 2015) (Mannion, J.).

addition of this requirement allows [the plaintiff] to analyze any proposed impact on the pipeline in accordance with 29 C.F.R. § 192.317(a), which requires the pipeline operator to "take all practicable steps to protect each transmission line ... from ... hazards that may cause the pipeline to move or sustain abnormal loads." The court agrees that this restriction is reasonable, particularly in light of this statutory requirement.

This Court agrees with Judge Mannion's analysis. As in *Constitution Pipeline Co.*, the condemnation action at hand simply requires UGI's approval in writing prior to Defendants use of any part of the easement as a road.[28] Furthermore, if Defendants contend that UGI's use of the land exceeds the property rights granted in the FERC Certificate, it is again well-settled that Defendants must make that challenge directly to FERC.[29] UGI may only condemn the property rights within the scope of the FERC Order; however, this Court's "role in proceedings involving FERC certificates is circumscribed by statute, and when a landowner contends that the certificate holder is not in compliance with the certificate, 'that challenge must be made to FERC, not the court.'"[30]

## 2. *Good Faith*

Second, Defendants argue that, while UGI holds the certificate of public convenience, it has failed to properly effectuate the attempted condemnation

---

[28] Docket No. 16-783, ECF No. 1 at 5; Docket No. 16-793, ECF No. 1 at 5; Docket No. 16-798, ECF No. 1 at 5; Docket No. 16-801, ECF No. 1 at 5.
[29] *Millennium Pipeline*, 777 F. Supp. 2d at 481.
[30] *Id.* quoting Guardian Pipeline, 2008 WL 1751358, at *16 n. 6 (W.D. Wis. April 12, 2011); *Portland Natural Gas Transmission Sys. v. 4.83 Acres of Land,* 26 F.Supp.2d 332, 339 (D.N.H.1998) (stating that "[t]he relevant statute and regulations place the power to police compliance [with a FERC certificate] squarely upon FERC," and that the district "court's jurisdiction extends solely to examining the scope of the certificate and ordering condemnation of property as authorized in the certificate").

because it has failed to fulfill its statutory obligation of good faith under the Natural Gas Act. Defendants specifically claim that UGI's extended written offer was unreasonable and not a good faith offer of compensation.

In seeking to condemn property under the Natural Gas Act, some courts have imposed a requirement that the condemnor engage in good faith negotiations.[31] When evaluating whether a condemnor engaged in good faith negotiations, a court must determine whether the condemnor made a good faith attempt to acquire the property rights by conventional agreement before suit was filed.[32] "When measuring good faith, the amount offered to the landowner 'is material only insofar as it may have some bearing on the question of whether the condemnor was in good faith.'"[33] A single offer to purchase the right may be sufficient to constitute good faith.[34]

Other courts have refused to impose a good faith requirement, stating that the language of the Natural Gas Act does not require a showing of good faith.[35]

---

[31] *Transcontinental Gas Pipe Line Corp. v. 118 Acres of Land*, 745 F. Supp. 366, 369 (E.D. La. 1990).
[32] *Id. citing Dixie Pipeline Co. v. Barry,* 227 So.2d 1, 5 (La. Ct. App. 3d Cir. 1969), *writ refused,* 255 La. 145, 229 So.2d 731 (La.1970).
[33] *Id. citing Dixie Pipeline Co.*, 227 So.2d at 5.
[34] *Texas Gas Transmission* Corp. *v. Pierce,* 192 So.2d 561 (La.Ct.App.3d Cir.1966).
[35] *See Millennium Pipeline Co., L.L.C. v. Certain Permanent and Temporary Easements*, 777 F. Supp. 2d 475, 482-3 (W.D.N.Y. 2011) (citing *Maritimes & Northeast Pipeline, L.L.C. v. Decoulos,* 146 Fed. Appx. 495, 498 (1st Cir.2005) ("Absent any credible authority making good faith negotiation a requirement precedent to the condemnation action, we decline the invitation to create one in this case") (citations omitted), *and Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres,* No. 08–168, 2008 WL 4346405, at *13 n. 3 (W.D. Pa. Sept. 19, 2008) (stating that courts that have imposed a good-faith requirement "gave no explanation why they adopted such a requirement," that in none of the cases imposing such a requirement did the courts refuse to authorize condemnation on the ground that the FERC certificate holder had failed to negotiate in good faith, and concluding that "[t]he plain language of the NGA does not impose an obligation on a holder of a FERC certificate to negotiate in good faith before acquiring land by exercise of eminent domain") (quoting *Kansas*

While the United States Court of Appeals for the Third Circuit has not yet taken a position on the matter, federal district courts in Pennsylvania have refused to impose a good faith requirement.[36] In citing a decision from the District of Kansas, the Honorable Kim Gibson from the United States District Court for the Western District of Pennsylvania explained:

> The court, in its own research, found that some federal district courts have imposed a good faith negotiation requirement. These courts gave no explanation why they adopted such a requirement. None of them refused to authorize condemnation because a holder of a FERC certificate failed to negotiate in good faith before seeking condemnation.
>
> The plain language of the NGA does not impose an obligation on a holder of a FERC certificate to negotiate in good faith before acquiring land by exercise of eminent domain . . . .[37]

At the preliminary injunction hearing, testimony was presented that UGI and the Defendants had engaged in negotiations for approximately eleven months prior to the filing of the condemnation actions. Defendants contend, however, that on the same day that the FERC Certificate was granted, UGI sent Defendants a letter with a final offer amount noting an expiration of that offer within seven days. The "final offer" proposed in these letters failed to include the multiple stipulations the parties

---

*Pipeline Company v. A 200 Foot by 250 Foot Piece of Land,* 210 F.Supp.2d 1253, 1257 (D.Kan.2002)). *See also Guardian Pipeline, L.L.C. v. 295.45 Acres of Land,* No. 08–C–28, 2008 WL 1751358, at *14 (E.D.Wis. April 11, 2008) (collecting cases, and concluding that the NGA does not obligate the condemnor, as a jurisdictional prerequisite, to negotiate in good faith with the landowner," but adding that coercive, unfair, or fraudulent tactics may render any agreement void or voidable as to the landowner)).

[36] *See Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, 2008 WL 4346405 at *13 n. 3 (W.D. Pa. Sept. 19, 2008); *see also Constitution Pipeline*, 2015 WL 1219524 at *4.

[37] *Steckman Ridge GP, LLC v. An Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, 2008 WL 4346405 at *13 n. 3 (W.D. Pa. Sept. 19, 2008) (*citing Kansas Pipeline Company v. A 200 Foot By 250 Foot Piece of Land,* 210 F.Supp.2d 1253, 1257 (D. Kansas 2002)).

had confirmed over the many months of negotiations. Furthermore, despite knowledge that Defendants were represented by counsel, the final offer letter was sent directly to Defendants.

Be that as it may, this Court need not decide whether to impose a good faith requirement in this case. The testimony that UGI engaged in many months of negotiations with Defendants and their counsel was undisputed. Multiple offers were made. Whether the offers were satisfactory to Defendants is an issue to be decided on another day in determining just compensation.

Accordingly, this Court finds that UGI has the substantive right to condemn Defendants' property, in accordance with the FERC Certificate.

**B. Motions for Preliminary Injunctions**

1. **REASONABLE PROBABILITY OF SUCCESS ON THE MERITS OF THEIR ARGUMENT**

Because this Court finds that UGI has the substantive right to condemn the Rights of Way under the Natural Gas Act, UGI is likely to succeed on the merits of its argument. The Third Circuit has held that "a certificate of public convenience and necessity gives its holder the ability to obtain automatically the necessary right of way through eminent domain, with the only open issue being the compensation the landowner defendant

will receive in return for the easement."[38] Once the right to condemn has been established, no merits issues remain because the amount of just compensation has no effect on the rights to the easement.[39]

### 2. IRREPARABLE HARM TO THE MOVANT IN THE ABSENCE OF RELIEF

UGI argues that, without the preliminary injunction, it will be unable to meet the timelines established by its contract with Hummel (with a completion deadline of February 1, 2017) and by the FERC Order (with a completion deadline of April 29, 2018). It contends that waiting until just compensation is paid will create a "domino effect" in delaying construction of the pipeline, resulting in financial harm of approximately $20,000 per day in delay costs and $87,000 per day in revenue loss.

Defendants challenge the categorization of irreparable harm and suggest that this is simply a result of "poor planning" on behalf of UGI which has simply "engaged in contracts prematurely."[40] Harm that UGI created itself does not, of course, support a preliminary injunction.

Defendants also argue that the only harm that UGI articulated is purely economic injury.[41] Defendants cite *Minard Run Oil Co. v. U.S. Forest*

---

[38] *Columbia Gas Transmission*, 768 F.3d at 304.
[39] *Id.* at 315.
[40] Teleconference with the Court on May 20, 2016.
[41] Dockets 16-783, 16-793, 16-798 ECF No. 17 at 6; Docket 16-801 ECF No. 17 at 6.

*Serv.*,[42] in stating that "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement."

This Court agrees with Defendants that UGI's monetary loss is the direct result of its own actions in entering contracts prematurely. Testimony revealed that UGI began the FERC pre-filing process in the spring of 2015 and filed its official application for the FERC Certificate in July 1, 2015. UGI then entered the contract with Hummel in October 2015, with the expectation that the FERC Certificate would be secured in January 2016. This did not occur, however, and the FERC Certificate was not granted until April 29, 2016. Accordingly, the monetary harm that UGI conceivably could suffer would be avoided if it had waited to enter into contracts until after the FERC Certificate was secured. The FERC Certificate provides for a completion date fifteen months beyond the deadline in the Hummel contract, time that could have been used to negotiate with landowners without the need for judicial intervention.

3. **GRANTING THE PRELIMINARY INJUNCTION WILL NOT RESULT IN GREATER HARM TO THE NONMOVING PARTY**

UGI contends that there is no irreparable harm to the Defendants because the damages are entirely compensable monetarily. Defendants argue

---

[42] 670 F.3d 236, 255 (3d Cir. 2011).

conversely that "no amount of money should be found to be adequate to justify the denial of the due process rights to property protection as guaranteed by the Fifth Amendment to the United States Constitution."[43]

The issue of the taking of property, however, has already been considered in this case prior to the granting of the FERC Certificate. Defendants were further afforded the opportunity to appeal; none of them pursued their administrative remedy. Accordingly, this Court agrees that the harm to Defendants, at this stage, can only be compensable monetarily.

### 4. THE PUBLIC INTEREST FAVORS GRANTING THE INJUNCTION

UGI argues that there is a substantial public interest at stake in this case because of the need for natural gas. It argues that FERC concluded in granting the certificate that "the benefits that the UGI Pipeline Project will provide to the market outweigh any adverse effects on existing shippers, other pipelines and their captive customers, and on landowners and surrounding communities."[44] Defendants, on the other hand, argue that the public interest is "better served by the protection of clear constitutional property rights than by a surface review and approval of a sprint to the acquisition of property rights."[45]

---

[43] Dockets 16-783, 16-793, 16-798 ECF No. 17 at 8; Docket 16-801 ECF No. 17 at 8.
[44] ECF No. 8-2, FERC Order, ¶ 17.
[45] Dockets 16-783, 16-793, 16-798 ECF No. 17 at 8; Docket 16-801 ECF No. 17 at 8.

The property rights of Defendants, however, have already been considered thoroughly by FERC. In granting the FERC Certificate, FERC weighed the public interest at stake against the Defendants' property interests and found in favor of the public interest. This Court does not have the authority to review FERC's findings.

Consequently, three of the four factors to consider in deciding whether to grant a motion for preliminary injunction weigh in favor of granting UGI's sought relief.

## C. Bond

Rule 65(c) requires that the movant requesting a preliminary injunction give security in an amount the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined. The Third Circuit has held that "[a]lthough the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary. While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory."[46] This exception exists only "when complying with the preliminary injunction 'raises no risk of monetary loss to the defendant.'"[47]

---

[46] *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 425-26 (3d Cir. 2010)(*citing Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 103 (3d Cir.1988)).
[47] *Zambelli*, 592 F.3d at 425 (*citing Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 210 (3d Cir.1990)).

UGI proposes to post a bond in an amount as determined by the Court as the appropriate security for the payment of just compensation. In the five cases that stipulated to UGI's motions for preliminary injunction,[48] UGI proposed a bond calculated on the acreage of the right of way multiplied by $5,000 per acre. This Court approved their proposal and will apply the same calculation to the four remaining Defendants.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant UGI's motion for partial summary judgment and its motion for preliminary injunctive relief.

An Order follows this Memorandum, specifying the bond amount in each case.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[48] Docket numbers 3:16-cv-00782, 3:16-cv-00786, 3:16-cv-00797, 3:16-cv-00800, and 3:16-cv-00806.